Arguing on behalf of the panel is David Medaro, and now arguing on behalf of the advocate is Thomas F. Goyer. Good morning, your honors. Good morning, Mr. Goyer. May it please the court, thank you for granting the oral arguments today. As you know, this matter derives from the original court decision made by the court in the first appeal. And actually preceding that, what we did was we filed a motion or a petition for reconsideration that you consider ruled on, and there was a small edit to the original decision which provided the Board of Police and Fire Commissioners with direction on what to do when the case was remanded. And that specific direction was to conduct a hearing, and that hearing was, the way it was phrased by the court, of course, is that the hearing before the commissioners may be limited to the issue of whether the Village Police Department should rehire and grant the petitioner the rank of sergeant. Following receipt of that decision... Since we're new now, and we don't have the same panel, did you find that when you got that, that that holding that was put in after the, you know, pundential of PFR, that that holding was somewhat contradictory? The body of the decision, the body of the opinion, seems to indicate that the plaintiff was entitled to a full hearing before the Board where charges are brought by the City, not by the Board of Trustees, but by the Board of Police and Fire Commissioners, where the charges are brought by the City, and he's entitled to this full hearing. But then the second district, the appellate court, said the hearing could be limited to his petition for rehire, which would seem to be different and put the burden on him to approve his petition. How do you read that? I was afraid we were going to get to that. Tom McGuire and I had done police commission work for 25 years, and both of us were scratching our heads. We'd never seen anything like this, but we followed the decision because it was very clear, the last sentence was very clear what to do, and we did it. So that brings us here. Now, to step back and to answer the question, it appears, I can't tell you how many times I've read the decision, and it appears it was broken into two parts. It first held that the specific statutes, 17 and 2.1-4, apply, and then it said, but the commissioners took the position that 35-whatever the section is, applies, and so it did two sets of reasonings. The first set of reasonings, it actually used the words due process, violated due process, just cause, hearing on charges, words like that, words that are, to me, dangerous because that has nothing to do with 2.1-4 and 17. Those words are reasons. The mayor reports the reasons to the board for the termination, and then they vote by majority. So I wasn't sure where the court was going with those types of terms, and then when they used the analysis of the section 35, then they went off on this, you can't discharge a person for two on the same grounds twice, and that went off on another tangent. So I guess the, no, it didn't make any sense to me, but I guess the way I'd like to approach this, if I could, is I'd like to explain why, unless there's a dispute about this, it was clear in the court decision, and it's clear from our petition for reconsideration, and it's clear to me today, that the specific sections apply. If you'd like that explanation, I can go through that, because I think I have it clear. If you think, for some reason, that section 35 applies, then I need to go through that. Let's get to 17 and 4. They don't require, there's no protective of property interest from a due process standpoint. There's no written charges that need to be heard by the police commission. This is strictly a political hiring and a political firing, irrespective of the police commission. The law that, I pulled the statutes of section 17 and section 4 that predated 1977 and postdated 1977, and the reason I did that is because there's two cases that predate 1977. This is really important, because the law before 1977 was that the police chief's firing was within the jurisdiction of the police commission. It was absolutely clear, and it was based on two cases. The first one, Wojik versus City of Harwood, 1974, that's 17 Illinois Appellate 3478, and then there was an earlier one, Edwards versus City of Marion, 1971, 130 Illinois Appellate 2nd, 895. Both of those cases followed the clear provisions of the pre-1977 statutes that simply said the police commission controls the discharge of the police chief, and I went back and I pulled the pre-1977 statutes, and that's what it says. Then if you go to 1970, post-1977 statutes, they added one paragraph. Each section, section 4 and section 17, added one paragraph, and it adds the current law that says if the chief of the police department is appointed by ordinance and removed by ordinance, it allows that, it allowed it in 77, they may be removed or discharged by the appointing authority. In such case, the appointing authority gives its reasons, and then there's a vote. The problem is, though, that when they added that language, they just continued right on in section 17 with the board of police, the board of fire and police commissioner shall conduct a fair and impartial hearing on the charges. They don't even separate that by a paragraph. Of course, of course.  It's ridiculous, but I'll just say two things. When you go to section 4, which was added, you can see it's a separate paragraph. It's just set out separately. And then you go to 17, they buried it. They buried it in the middle of the rank-and-file officers being appointed, and then the rank-and-file officers having a hearing for cause for dismissal. But I'll tell you this as a second point. We've been doing this for 20 years. Nobody would ever suggest the police chief goes before the police commission for just cause for dismissal. It's just, that's not the law. It doesn't happen in reality out there every day that we do this, and it's not, I don't know exactly what you're saying. It's difficult to articulate because of the way it's written, but it's clearly isolated based on the 77 amendment. I think that's, I knew that was going to be a problem. I really don't have much more to add. I know that's the issue, unless you have other questions. When in your consideration of this was the plaintiff eligible to retire on pension? What does that phrase mean, and when was he able to retire on pension? You know, we, there was, Roger is taking the position that eligibility means when you reach maximum benefits, I guess is what his position is. We clearly argued in all of our briefs that we've written so far that eligibility means just that. You reach the point where you are eligible to receive a dollar of benefits in your end. Even partial? Even partial. Even before he was 55, he could have received some partial benefit, correct? No, I think. He couldn't start drawing until he was 55. He would be eligible for a benefit, but not start drawing until he was 55. Right, our position was obviously on his birthday he was entitled to benefits. Is it when you become eligible, or eligible in terms of it's out there, or when you can actually receive funds? I don't think I can answer that. Well, there's one part of the record that indicates on 12-3104 that the plaintiff was eligible for partial pension benefits. Probably not eligible to draw, I'm guessing, until he's 55, but invested? What does that mean? I don't have that expertise. All I can tell you is there's no dispute that the day after his birthday he was eligible to pull benefits at a partial rate. He was able to receive money. You say full benefits, but it's really not full. No, I'm not suggesting full benefits. I just think he's eligible to receive pension benefits, therefore he qualified. He no longer is furloughed. That would be our position. And then another question, when was he actually discharged? We have a series of events taking place that everyone's familiar with. When was he actually discharged? Well, clearly the intent of the village board was to terminate him effective the day after. They must have thought this through. This was the prior administration and prior attorney and all of that. But there was clearly an intention to not have him furloughed. They must have thought that through. And so they made an effective the day after his birthday. They must have known when his birthday was. I don't know that for a fact, but it's not a coincidence. So, you know, they made a motion. It had a prospective effective date. I don't know any rule or municipal law anyway that would prohibit that. He received, from the time frame they made those series of motions, until the day after his birthday. He received full pay, full employment benefits. So he wasn't, you know, he wasn't removed before that day. So our position is, of course, he would be removed whatever that day was. It was April 30th, 2005. The statutes in 17 and 4, when it's talking about the police chief, it talks about removal or discharge. Is there some reason you think that the statute says removal or discharge? What's the difference between the two? You know, we tried our best to make an argument about the fact that he wasn't removed or discharged based on the trial court's determination. I think that was effectively defeated or ruled on by the first court and said he was, in fact, discharged. You can't argue he wasn't discharged. The distinction between removal and discharge, I don't see any distinction. I realize the legislature uses words, but I mean, I've terminated a lot of police officers and police chiefs in my life, and I never noticed a distinction. I never was questioned about it. I don't know of any. Well, I mean, when it goes on to talk about a break and file officer, when it talks about discharge, the board may discharge that person. I mean, is removal from the office of chief, perhaps, and discharge is removal from the police department? There is a distinction between the office of police chief and the employment status of a police chief. That could be, you know, the statutes that were drafted in 17 and 4 regarding the police chief have to do with his employment status. I'm not sure they have to do with his office of police chief because that's his only protection he has. He has no other protection other than reasons for discharge or removal. Without that, I don't think he would be at will. So I guess I'd have to side on the fact that those statutes would relate to his employment status. But I don't know if anyone would support that as well. If he had resigned his position prior to April, let's say, or 29th, he would have reverted to his prior position. Is that correct? Yes. I believe so. If he resigns or is discharged... Excuse me. I'm sorry. And then, of course, once he reverts back to that, to be removed from the department, he'd have to go before the board of police and fire commissioners. That's cause. Right. You're back in the rank and file. That section, you're right. It says if he resigns as chief or is discharged as chief prior to attaining retirement eligibility, he reverts. That's true. I suppose that would have been a good move. I'm sorry? That would have been a good move. Yeah. That thought crossed my mind. Yeah. Okay. There seemed to be a lot of activity because of this birthday. They must have been thinking through very hard how to accomplish this on both sides. And I can imagine the exercise they were going through trying to figure it out. Not to mention the voting was all mixed up. They didn't have the votes. They weren't sure where they were going. It was very confusing as far as the votes were concerned. You earlier, pursuant to a question, said that you think eligibility for pension is the first available. What do you base that on? I don't have a basis because I'm not an expert. We briefed it based on the definition of eligibility and the common sense term of benefits. I'm eligible to receive. There's nothing there that says how much of the benefit you need to receive in order to be eligible. We have no guidance on that. So it's just how much? If it's a dollar, I use a dollar. If you're eligible to receive the first dollar of a pension benefit, our position would be you lose your furlough rights. Which I guess in the bigger scheme of things makes sense. This was drafted to protect the police officers who go up the force, they become a police chief. And then the legislation obviously protects them. It says you can't be removed politically and be thrown out of the police department. You just go down in rank and then everybody pushes down and the last man, first man, last man in goes out. Which is how it's actually done out there. But if you're eligible for pension, they must have cut it off and said it's time to retire. But there's nothing in that says you have to wait until you get maximum benefits. I don't know if that would make any sense because the pension rules may be staged differently where people are eligible at different times as they get older. I don't know that it's uniform. I don't know that for a fact. Okay. Thank you. I certainly have a chance for reply. Thank you. Good morning. May it please the court. I'm Thomas McGuire. I'm the attorney representing Roger. Who I refer to as Roger S. Because I lost up the name. Let me first of all mention I have a terrible cold and I'm not telling you that for the purpose of sympathy. Just in case my voice cracks. Okay. Which also accounts for why I have the water here. A very perplexing case. Very perplexing. Mr. McDonnell is correct that we have been friendly adversaries. Not too friendly but friendly adversaries. And occasionally we're on the same side on these cases, police cases. My first temptation on this case as I'm sitting there listening to opposing counsel is to simply stand up and say to the court I have nothing to add. But then I'm thinking to myself as an officer of the court I have an obligation to present information to the court that may assist the court in making its determination in this case. So even though one side of me was saying get up there. The other side was saying now you're an officer of the court so get up there and answer the questions. I recognize I have a limited period of time and I'm using it as we speak. But I would respectfully direct the attention of the court to page two of the brief of Roger. Roger S. And there are two paragraphs from the decision of the circuit court that I urge you to very carefully read prior to making a decision in this case. I fully recognize that a decision of the ruling of the circuit court is not binding upon this court. And you can disregard it. But I think the opinion as written by the circuit court does cover all of the areas. And obviously I agree with it. I'm certainly not going to disagree with the circuit court. Particularly in this case. I would like to address some put things in perspective as an officer of the court. I'd like to put some things in perspective regarding this case. Roger started with the Richmond Police Department as a patrolman. He had to go through the testing procedures of the Board of Fire and Police Commissioners. He wound up on the eligibility list. He was appointed as a patrol officer by the Board of Fire and Police Commissioners. They're the ones who appoint. So too when it comes to Sergeant. He had to go through the testing procedures of the Board of Fire and Police Commissioners. And they had to post an eligibility list. And he was promoted by that Board of Fire and Police Commissioners to the position of Sergeant. Then the mayor, the mayor who terminated his employment made a decision to have Roger become the Chief of Police of Richmond. And the law is, as I understand it, the Board of Fire and Police Commissioners act. If you are appointed to the position of Chief of Police that's not under the jurisdiction of the Board of Fire and Police Commissioners. It's under the jurisdiction of the Village President and the Board of Trustees. Let me just interrupt you for a second. If you're eligible to retire, if you're not eligible to retire on a pension and you've been brought up through the ranks as you've just described your claim was, then he reverts back to Sergeant. I think everyone agrees that if the city wanted to remove him at that point in time they would have to go before the Police and Fire Commission with charges to remove him. And they didn't. And they didn't, right. One of the thresholds, of course, I think there are many threshold issues here, but one of the threshold issues is whether he was eligible to retire at the time. Let's just assume for a minute that he was. And I know you disagree with that. But let's just assume for a minute that he was eligible under the statute when he was removed. And again, I know you disagree with this, but he was removed after his 55th birthday. Does he get a hearing before the Board under the hearing before the Commission under Section 17 under those circumstances? If he was removed after his 55th birthday and we were to find he was eligible to retire on pension when he was discharged, does he get a hearing before the Board of Police and Fire Commission under Section 17? Yes, because he chose not to take the IMRF pension. Eligible to take the pension doesn't mean that you have to take the pension. He made the decision that I want to go back to Sergeant. So just because there's the word eligible doesn't mean that you're out. Whether eligible means you're able to, whether you choose to or not. But what you're arguing is that he chose not to take the pension. That is correct. But my question is a little more specific. Again, you disagree with that. Being eligible to retire and actually taking the pension are two different things according to your argument. But let's just say that we find that the statute says that eligible means he's able to take it, not whether he chooses to or not. So again, I'm assuming a number, or presuming a number of things that you disagree with, but I just want to try and hone in on one aspect of this. I'm presuming that he's eligible to retire on pension. I'm presuming the word eligible means he doesn't have to take it, but whether he chooses to take it or not. I'm presuming that he was discharged after his 55th birthday. I mean, he falls outside the auspices. As chief, he falls outside the auspices of the Police and Fire Commission, correct? Correct. So he's not entitled to a hearing under those circumstances, as I've outlined, that you disagree with. Under those circumstances, he's not entitled to a hearing before the Commission on cause and charges like a rank-and-file officer would. That's correct, because the Police is in the hands of the Mayor and he did remove him and it was not disapproved by the Board of Trustees and the municipality, but that somewhat respectfully begs the issue. He started with the Police Department under the Board of Fire and Police Commissioners. He took a leave of absence from the Board of Fire and Police Commissioners upon becoming chief. As a result of that, if you want to get rid of him off the Police Department, you file charges against him with the Board of Fire and Police Commissioners. No charges were ever filed. None whatsoever. Now, we filed, we on behalf of my client and I, filed a petition from the instatement to the position of sergeant. We wanted to go back to sergeant. Why? Because he was on leave from the rank of sergeant of the Board of Fire and Police Commissioners. And the Board of Fire and Police Commissioners, in their finite wisdom, didn't ask any type of hearing. It just said, you're out. Now, the Board of Fire and Police Commission Act was put into effect by the legislature to basically take police officers from the category of terminable at will. Terminable at will. But a chief, you think, is terminable at will. I have to say, as an officer of the court, yes, a chief of police in Richmond is subject to termination. It's subject to termination by the mayor. And as long as the Board of Trustees don't disapprove of it, that's the ballgame. But that's somewhere where we get into the problem here. Because the mayor terminated him as chief of police. Then the mayor, pardon the vernacular, did the backstroke on it and says, no, I really didn't terminate him because we're going to put him back. The bottom line is the mayor terminated him as chief of police. Our position is then that Roger had the legal right under the Board of Fire and Police Commissioners to go back to his rank of sergeant. When was he discharged under your analysis? When the mayor first sent him the letter saying you're terminated. Effective immediately. Was it March 15th? I don't remember the exact date, but it's in the record, obviously. And that letter says you're terminated. But under the law, he's not terminated unless it's voted on by the majority of the board. Well, you see, you get into a little complication there because going back to high school civics, legislative, executive, judicial branches, obviously Richmond doesn't have a judicial branch, but it has a legislative executive. Police Department's part of the executive branch of the government. Now, did the board of trustees reverse that? No. The termination occurred when the mayor wrote the letter. The rest is game playing to try to figure out who's on first. What would happen to him if the board said no and continued to say no? If the mayor says you're fired and then he brings the reasons to the board and the board says no, then he's not terminated by the local ordinances and the municipal code until the new mayor took over. Yes, because when the new mayor comes in, automatically he is no longer eligible. I should phrase it better. The term of office of the person who occupies the chief of police has to be with the term of office of the mayor. He's the chief after he gets the pink slip all the way up until the new mayor comes in. Well, the board did say you're terminated. The board of trustees. But my position is he was terminated when the mayor said you've had it. That's my vernacular way of saying it, but that's what was in the letter. You're terminated, effective immediately. I'm terminated as chief of police, but the board of fine police commission rank of sergeant means something. And I petitioned the board of fine police commissioners to be reinstated to the rank of sergeant. And the board of fine police commissioners didn't conduct a hearing, didn't reinstate him. That's what we hear. It's a very complexing case. And it's because based on your petition was based on your argument that he was terminated and your based upon your understanding of the words eligible to retire on April 30th of 05. Was your client, and I know he didn't choose to retire and he didn't submit his papers to retire, but was your client eligible to retire on April 30th of 05? According to the statute, yes. But obviously, you know the position and reality. So coming the next day, May 1st, does he get his first, or I'll say two weeks later, does he get his first check if he does nothing? Well, he wouldn't get a check until he actually applied to IMRF, the Illinois Municipal Retirement Fund, and he never applied. And the reason why he didn't apply to IMRF is because he was a member of the police department as a sergeant. Is that part of the eligibility requirements to obtain to be pension eligible? I consider it to be because obviously, if nobody applies, what's IMRF going to do? Is it the city village of Richmond who determines you are eligible to receive benefits or is it IMRF who determines if you are eligible to receive benefits? In my opinion, it's IMRF. They are the governing authority of the Illinois Municipal Retirement Fund. So it would be your position that until they say you're eligible, you're not eligible? I'd go one step further. I'd agree with that, and I'd also go he has to apply for it. And he didn't. Why didn't the legislature say that? Why didn't they say instead of saying eligible to retire on pension, why didn't they say chooses to retire on pension or is eligible to and elects to retire on pension? If I was a legislator and that's what I wanted to say, I would be a little bit more specific than that. Well, that gets to the point of the legislature writes them and leaves it up to the capable hands of the judiciary to interpret them. And that's somewhat the quandary that we're in. But if you were to say to me, well, sum up your position, the position comes down to this. Being under the jurisdiction of the Board of Fire and Police Commissioners must mean something. He was under the jurisdiction of the Board of Fire and Police Commissioners. At the very least, they should have given him a hearing before they removed him completely from the police department. There's games being played here. I'd leave it in your capable hands, obviously. I think my time is up. I'll take any other questions. Thank you very much. Thank you. Do you wish to reply? Sure, I'll wait a minute. Okay. Thank you. I heard the statements made by Mr. McGuire about agreeing he was eligible. And that was also made in the record on page 13 of our original, or this case's appellate's brief. We know that at page C35, plaintiff admitted that when he asked by the hearing officer Kuda in the January 2009 hearing that he was eligible to receive pension benefits. And those pension benefits were $948 per month at page C214. So we established during the creation of the record that that was a fact. I don't agree, of course, that eligibility has anything to do with his actual receipt. I don't think it has anything to do with his election or else his furlough status would be within his control. And I don't think that's what the law provides. The law dictates when your furlough status sets in, and I don't think it has anything to do with what the employee does. It seems like, and counsel pointed out the trial court's language on page 2, that cited on page 2 of his brief, it seems that a threshold decision that the trial court made was that the chief was eligible to retire, had the option, I shouldn't say eligible to retire because we don't know what that means, but the court said had the option to retire on April 30th but was not required to do so. And that appears to me to be how that court, the trial court of the, the original trial court? No, the second trial court. And on page 2, is it the first quote or the second? The second quote, and it starts in summary, and then that line I'm referring to is the fourth line, Suchik had the option to retire but was not required to do so. So it appears to me that court reading eligible to retire in the same manner that your opposing counsel does. Well, you know, I didn't, I don't remember this sentence, but I do remember the trial court completely treated this as a just cause hearing. If it was up to Judge Caldwell, he would have ruled you send him to the police commission, you give him a just cause, and if you don't have written charges that are supported by the typical rank and file standards, he's on the police force. And as far as, and I never remember him getting into the issue of eligibility the way we are focusing on it today here at all. So I don't know if that sentence is loose or what, but obviously I disagree with his option. That's the point I tried to make. I think that would leave it within the employee's power as to whether or not he's furloughed or not, and I don't think that was what the legislature intended. It's $1,000 a month. Well, let's assume this. Let's assume that he had applied and IMRF said, no, you're not eligible. We're not going to make those payments. That might be relevant. If he's not eligible, in other words, if he didn't, I don't know what would have qualified him, but age, age is obviously an issue. If we were wrong about his birthday, he wouldn't be eligible. He'd be a sergeant today. If we picked the wrong date, if for some reason we thought that the board thought that whatever, March 29th was his birthday and it was really April 29th or the wrong year or something, that would be an eligibility that he failed and he wouldn't be eligible for pension. So if there's some other reason because of health or whatever. But you're saying that that would be your determination. I'm saying or asking you if IMRF were to say for whatever reason, rightly or wrongly, we're not, we don't think you're quite eligible. I don't want to use that word to define that word, but IMRF says you can't receive payments yet. Yes. I think that probably would protect his furlough status because. But one of those requirements is that he apply. Isn't that somewhat of a catch-22? Yeah. We all agree the statutes are as clear as mud. But assuming that. He doesn't apply, he's not going to receive his benefits. And IMRF is not going to find him eligible. I mean, I don't think that's the qualification we're all talking about. But yeah, that would be a problem. That would put it back in his control, I suppose. And if that is the case, the very first thing that this, and I'll give you some more time because I took some of your time. But the village can then bring charges and bring him before the commission and have him discharged as a sergeant. If they have cause. Right. If they want to fire him for political reasons, that's a problem. Right. I didn't mean it that way. Assuming he reverts and the village says this person should not be a sergeant or any member of this police department, file charges and he's entitled to a full hearing. Is that correct? Right. And you, did you have any final remarks? No, that's, that hypothetical you raised is, was there ever anything in the record to indicate that he could not start drawing his pension as of April 30th, 05? No, I think that's admitted on the pages I gave you. I don't think that's an issue at all and you can ask Tom but I don't think that's the issue. And that was his 55th birthday? That was his 55th on the 29th and he was terminated on the 30th, effectively on the 30th. And your position is he's, because of that final letter that says you received benefits up until and including April 30th salary and benefits? Yeah, that's agreed to too. He agreed, he received all of his pay, vacation pay, all of his benefits and salary through the, either the 29th or the 30th, through the date of his termination, effective date of his termination, 30th. Thank you very much. Thank you again for the argument.